# 25-2862

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

———— ◆◆ ————

ALEXANDRA FIALLOS, Individually and as Parent and Natural Guardian of L.V.,

*Plaintiff-Appellant,*

*(For continuation of caption see inside cover)*

v.

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*

————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

RORY J. BELLANTONI
DAVID MARKESE
LIBERTY & FREEDOM LEGAL GROUP
105 East 34th Street, Suite 190
New York, NY 10016
(646) 850-5035
rory@pabilaw.org
*Attorneys for Plaintiff-Appellant*

*(Continuation of caption).*

ALEXANDRA FIALLOS, Individually and as parent and natural guardian of L. V.,

Plaintiff - Appellant,

ROSA ZAYAS, Individually and as parent and natural guardian of R. Z., YVONNE DAVIS, Individually and as parent and natural guardian of O. C., LIZETTE MARTINEZ, Individually and as parent and natural guardian of H. G. M., JOSEPH MONDANO, Individually and as parent and natural guardian of L. M., KEISHA ARCHIBALD, Individually and as parent and natural guardian of N. A., JULISSA CRESPO, Individually and as parent and natural guardian of B. T., JULIO PERALTA, Individually and as parent and natural guardian of C. P., BRIANNA DAVIS, Individually and as parent and natural guardian of O. D, MAYLENE OTERO, Individually and as parent and natural guardian of K. R-O., CANDIDA DIAZ, Individually and as parent and natural guardian of N. D., BINTU KABBA, Individually and as parent and natural guardian of O. F., CARLOS NICHOLLS, Individually and as parent and natural guardian of T. A-N., PAVLO POPOVYCHENKO, Individually and as parent and natural guardian of V. P.,

Plaintiffs,

v.

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendants – Appellees.

# **TABLE OF CONTENTS**

*Page(s)*

TABLE OF AUTHORITIES………………………………………………..i

JURISDICTIONAL STATEMENT……………………………………..1

Basis for the District Court's Jurisdiction…………………………..1

Basis for this Court's Jurisdiction........................................................1

Timeliness of the Appeal ...................................................................2

Assertion of this Court's Jurisdiction ...............................................3

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW…………..……..3

STATEMENT OF THE CASE……………..…………………………..3

SUMMARY OF THE ARGUMENT…………………………………....6

ARGUMENT………………………………………………………7

I.    STANDARD OF REVIEW ......................................................7

II.   IDEA FRAMEWORK ............................................................8

III.  THE DISTRICT COURT LACKS AUTHORITY TO
      ADJUDICATE THE PROPRIETY OF FILING A NOTICE
      OF APPEAL…………………………………………….…….12

IV.   THE DISTRICT COURT'S RETENTION OF SANCTIONS
      JURISDICTION WAS PREMATURE AND EXCEEDED
      PERMISSIBLE COLLATERAL AUTHORITY .....................................18

V.    THE SANCTIONS PROCEEDINGS FAILED TO COMPLY
      WITH RULE 11'S MANDATORY PROCEDURAL
      SAFEGUARDS…………………………………….…………20

      A.   Any Party-Initiated Sanctions Were Foreclosed by Rule 11's
           Safe-Harbor Provision……..……………….……………..…21

i

B.   The Court Did Not Properly Invoke Rule 11(c)(3)'s *Sua Sponte* Procedure……………….…………………..……………………….23

C.   The Proceedings Failed to Provide the Notice Required by Due Process…………………………………………………………24

VI.   DISTRICT COURT'S EXPANSION OF SANCTIONS AUTHORITY TO THE FILING OF A NOTICE OF APPEAL CREATES A STRUCTURAL CHILLING EFFECT INCONSISTENT WITH THE ALLOCATION OF AUTHORITY BETWEEN DISTRICT COURTS AND COURTS OF APPEALS..………………………………….…..…….……..…….25

CONCLUSION…………………………………………………………...28

CERTIFICATE OF COMPLIANCE……………………………………......30

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC,*
 813 F.3d 98 (2d Cir. 2016) ...................................................................... 17

*Azizian v. Federated Dep't Stores, Inc.,*
 499 F.3d 950 (9th Cir. 2007) ................................................................... 13

*Bacon v. Phelps,*
 961 F.3d 533 (2d Cir. 2020) .................................................................... 16

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley,*
 458 U.S. 176 (1982) .................................................................................. 9

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz,*
 290 F.3d 476 (2d Cir. 2002) .................................................................... 12

*Boguslavsky v. S. Richmond Sec., Inc.,*
 225 F.3d 127 (2d Cir. 2000) .................................................................... 16

*C.F. ex rel. R.F. v. New York City Dep't of Educ.,*
 746 F.3d 68 (2d Cir. 2014) ....................................................................... 9

*Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302,*
 400 F.3d 508 (7th Cir. 2005) ................................................................... 10

*Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.,*
 526 U.S. 66 (1999) .................................................................................... 8

*Cohen v. Beneficial Indus. Loan Corp.,*
 337 U.S. 541 (1949) ................................................................... 1, 2, 3, 20

*Com. Space Mgmt. Co. v. Boeing Co.,*
 193 F.3d 1074 (9th Cir. 1999) ................................................................ 18

*Conway v. Vill. of Mount Kisco, N.Y.,*
 750 F.2d 205 (2d Cir. 1984) .................................................................... 15

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) .......................................................................... Passim

*Davis v. Crush*,
    862 F.2d 84 (6th Cir. 1988) ........................................................... 13

*Doe v. E. Lyme Bd. of Educ.*,
    790 F.3d 440 (2d Cir. 2015) ...........................................................11

*Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-*,
    580 U.S. 386 (2017) ..................................................................... 8, 9

*Gardiner v. A.H. Robins Co.*,
    747 F.2d 1180 (8th Cir. 1984) ....................................................... 18

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982) .................................................................. 13, 26

*Grullon v. Mukasey*,
    509 F.3d 107 (2d Cir. 2007) .......................................................... 16

*Hester Indus., Inc. v. Tyson Foods, Inc.*,
    160 F.3d 911 (2d Cir. 1998) .......................................................... 18

*Honig v. Doe*,
    484 U.S. 305 (1988) ...................................................................... 10

*In re Ames Dep't Stores, Inc.*,
    76 F.3d 66 (2d Cir. 1996) .............................................................. 24

*In re Austrian & German Bank Holocaust Litig.*,
    317 F.3d 91 (2d Cir. 2003) ............................................................ 19

*In re Pennie & Edmonds LLP*,
    323 F.3d 86 (2d Cir. 2003) ...................................................... 23, 24

*In re Sims*,
    534 F.3d 117 (2d Cir. 2008) ........................................................... 8

iv

*In re Wolf*,
    842 F.2d 464 (D.C. Cir. 1988) ............................................................... 18

*John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*,
    318 F.3d 545 (3d Cir. 2003) ................................................................. 11

*M.O. v. New York City Dep't of Educ.*,
    793 F.3d 236 (2d Cir. 2015) ................................................................... 8

*M.R. v. Ridley Sch. Dist.*,
    744 F.3d 112 (3d Cir. 2014) .......................................................... 10, 11

*Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*,
    386 F.3d 158 (2d Cir.) ......................................................................... 10

*Marmolejo v. United States*,
    196 F.3d 377 (2d Cir. 1999) ................................................................. 16

*Marrero Pichardo v. Ashcroft*,
    374 F.3d 46 (2d Cir. 2004) ............................................................ 15, 16

*Mason v. Amtrust Fin. Servs., Inc.*,
    848 F. App'x 447 (2d Cir. 2021) .......................................................... 17

*Mendez v. Banks*,
    65 F.4th 56 (2d Cir. 2023) ..................................................................... 4

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ............................................................................... 2

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
    297 F.3d 195 (2d Cir. 2002) ................................................................... 8

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ................................................................. 17

*Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*,
    174 F.3d 87 (2d Cir. 1999) ................................................................... 24

*Oliveri v. Thompson*,
803 F.2d 1265 (2d Cir. 1986) ............................................................ 27

*Perpetual Sec., Inc. v. Tang*,
290 F.3d 132 (2d Cir. 2002).............................................................. 22

*Phelps v. Kapnolas*,
123 F.3d 91 (2d Cir. 1997) ............................................................... 16

*Rana v. Islam*,
887 F.3d 118 (2d Cir. 2018) ............................................................. 16

*Rice v. NBCUniversal Media, LLC*,
No. 19-CV-447 (JMF), 2019 WL 3000808 (S.D.N.Y. July 10, 2019) .................. 5

*Schlaifer Nance & Co. v. Est. of Warhol*,
194 F.3d 323 (2d Cir. 1999) ............................................................... 2

*Smith v. Barry*,
502 U.S. 244 (1992) ........................................................................ 16

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*,
96 F.3d 78 (3d Cir. 1996) .................................................................. 11

*T.K. v. New York City Dep't of Educ.*,
810 F.3d 869 (2d Cir. 2016) ............................................................ 8, 9

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
752 F.3d 145 (2d Cir. 2014) .............................................................. 10

*Ted Lapidus, S.A. v. Vann*,
112 F.3d 91 (2d Cir. 1997) ............................................................ 24, 25

*U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*,
775 F.3d 128 (2d Cir. 2014) ............................................................... 2

*United States v. Rodgers*,
101 F.3d 247 (2d Cir. 1996) ............................................................... 5

*Ventura de Paulino v. New York City Dep't of Educ.*,
    959 F.3d 519 (2d Cir. 2020) ...................................................................11, 12

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
    564 F.3d 110 (2d Cir. 2009) ..................................................................... 8

*Zervos v. Verizon New York, Inc.*,
    252 F.3d 163 (2d Cir. 2001) ..................................................................... 8

## Statutes

20 U.S.C. § 1400 ........................................................................................ 1
20 U.S.C. § 1415(b)(7)(A) .......................................................................... 9
20 U.S.C. § 1415(i)(2)(A) ......................................................................... 10
20 U.S.C. § 1415(j) ............................................................................... 4, 10
28 U.S.C. § 1292 ........................................................................................ 5
28 U.S.C. § 1331 ........................................................................................ 1
28 U.S.C. § 1927 (A-64) ............................................................................ 5
N.Y. Educ. Law § 4404(1)-(2) (McKinney) .............................................. 9

## Rules

Fed. R. App. P. 4(a)(1)(A) .......................................................................... 2
Fed. R. App. P. 32(a)(5) ........................................................................... 30
Fed. R. App. P. 32(a)(7)(B) ...................................................................... 30
Fed. R. App. P. 38 ............................................................................. Passim
Fed. R. App. P. 38; and (2) ........................................................................ 6
Fed. R. Civ. P. 11 .............................................................................. Passim
Fed. R. Civ. P. 11(b) ........................................................................... 23, 25
Fed. R. Civ. P. 11(c)(2) ........................................................... 7, 21, 22, 25
Fed. R. Civ. P. 11(c)(3) ..................................................................... Passim
Fed. R. Civ. P. 41(a)(1)(A)(i) ................................................................ 5, 6
Fed. R. Civ. P. 65 ...................................................................................... 3

## Other Authorities

ABA Model,
    Code of Judicial Conduct Rule 2 ......................................................... 26

## JURISDICTIONAL STATEMENT

**Basis for the District Court's Jurisdiction**

The district court had subject-matter jurisdiction over this action under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA"). Jurisdiction was also conferred on the District Court by 28 U.S.C. § 1331 because the cause of action arose under the laws of the United States.

**Basis for this Court's Jurisdiction**

This Court has jurisdiction under the collateral-order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The challenged orders are: (1) the October 24, 2025, order retaining sanctions jurisdiction following Appellant's Rule 41(a)(1)(A)(i) voluntary dismissal (A-83), and (2) the November 7, 2025, order directing the parties to address whether the filing of this appeal is itself sanctionable conduct (A-92). These orders satisfy *Cohen*.

**First**, they conclusively determined that the district court would exercise sanctions jurisdiction notwithstanding dismissal and would adjudicate whether the filing of a notice of appeal may, in itself, warrant sanctions. The court expressly retained sanctions authority—before Defendants' motion for sanctions—set a briefing schedule and expanded the scope of the proceedings to encompass appellate conduct. Nothing remains tentative.

1

**Second**, the orders resolved an important issue wholly separate from the merits of the IDEA claims, which were voluntarily dismissed. The question is not whether sanctions are substantively warranted but whether—and to what extent—a district court may exercise collateral sanctions authority after dismissal and while appellate review is pending, including the filing of a notice of appeal. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990); *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999); *see also U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014).

**Third**, the orders are effectively unreviewable on appeal from a final judgment. Once a district court adjudicates the propriety of filing a notice of appeal, the asserted allocation of authority between the trial and appellate courts will already have been exercised. A later appeal cannot restore the structural boundary between the district court's sanctions authority and the appellate court's authority under Fed. R. App. P. 38. Immediate exposure to sanction proceedings directed at appellate conduct poses a present and concrete hardship that cannot be remediated by post-judgment review. *See Cohen*, 337 U.S. at 546; *cf. Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009).

**Timeliness of the Appeal**

The Order from which this appeal is taken was entered on October 24, 2025. [A-83]. Pursuant to Fed. R. App. P. 4(a)(1)(A), Appellant's Notice of Appeal was

due within 30 days, or no later than November 24, 2025. Appellant's Notice of Appeal was filed on November 6, 2025. [A-90]. Thus, this appeal was timely.

**Assertion of this Court's Jurisdiction**

The Orders appealed from are reviewable collateral orders, appealable under *Cohen*, 337 U.S. at 546.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the district court's orders retaining sanctions jurisdiction after voluntary dismissal and directing briefing on whether the filing of this appeal is itself sanctionable are immediately appealable under the collateral-order doctrine.

2. Whether a district court may, after voluntary dismissal and while appellate review is pending, adjudicate the propriety of filing a notice of appeal—an issue ordinarily governed by Fed. R. App. P. 38.

3. Whether the sanction proceedings complied with the procedural safeguards of Fed. R. Civ. P. 11, including the safe-harbor requirement and the requirement of specific notice of the conduct at issue.

## STATEMENT OF THE CASE

This case involves Appellant Alexandra Fiallos ("Fiallos") seeking pendency determinations and IDEA funding for her child L.V.'s placement at the International Academy for the Brain ("iBRAIN") for the 2025–2026 school year. The First Amended Complaint was filed on September 10, 2025. (A-24). Three emergency preliminary injunction motions were filed under Fed. R. Civ. P. 65 (ECF Nos. 10,

3

25, 40) to compel expedited administrative resolution and direct funding from Appellees, Melissa Aviles-Ramos, and the New York City Department of Education ("DOE")—two of which were filed under 20 U.S.C. § 1415(j).

The district court denied the first motion on October 20, 2025 (Dkt. No. 49), for lack of irreparable harm, citing *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023). The order noted counsel's history of similar motions as "meritless, if not frivolous" (Dkt. No. 49 at 11). The second motion was denied summarily during a September 18, 2025, conference (Dkt. No. 39-1). On October 21, 2025, Appellant updated the court on Appellees' partial pendency payments (Dkt. No. 51) and requested an adjournment of a scheduled conference (Dkt. No. 52), which was denied (Dkt. No. 53). The district court ordered limited discovery into iBrain's finances (Dkt. No. 53).

The third motion was withdrawn on October 23, 2025, with Appellees' consent, after payment alleviated the alleged irreparable harm. (A-59). The withdrawal motion stated:

> "Plaintiff makes this request in light of Defendants' recent release of payments for L.V.'s tuition and nursing services for the 2025-2026 school year, which were subject to the relief sought in the aforementioned motion. Accordingly, Plaintiff no longer seeks this emergency relief. Defendants consent to this withdrawal."

(*Id.* at 1).

4

The action was voluntarily dismissed without prejudice on October 24, 2025, under Fed. R. Civ. P. 41(a)(1)(A)(i). (A-61). The district court's endorsement closed the case but retained jurisdiction to address any request for sanctions, citing *Rice v. NBCUniversal Media, LLC*, No. 19-CV-447 (JMF), 2019 WL 3000808, at *4 (S.D.N.Y. July 10, 2019), *report and recommendation adopted,* No. 19-CV-447 (JMF), 2019 WL 3752491 (S.D.N.Y. Aug. 8, 2019). (A-83).

The DOE filed a letter on October 24, 2025, proposing a sanctions briefing schedule under Rule 11 and 28 U.S.C. § 1927 (A-64), which the district court endorsed on October 27, 2025 (A-87). On November 4, 2025, Fiallos moved for reconsideration, citing *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (S.D.N.Y., October 29, 2025), as an intervening precedent granting similar relief. (A-88). The DOE opposed. (Dkt. No. 65).

On November 7, 2025, the district court denied reconsideration, retained jurisdiction (deeming the appeal "plainly unauthorized" under 28 U.S.C. § 1292), and directed briefing on whether the appeal itself is sanctionable, citing *United States v. Rodgers*, 101 F.3d 247 (2d Cir. 1996). (A-93). The DOE moved for sanctions and provided supporting documents on November 14, 2025 (ECF Nos. 70–73); Fiallos filed opposition documents on December 8, 2025 (ECF Nos. 78–79); and the DOE filed a reply on December 22, 2025 (Dkt. No. 82). No ruling has been issued to date.

5

## SUMMARY OF THE ARGUMENT

The district court exceeded its authority in two fundamental respects: (1) by asserting power to determine whether the filing of a notice of appeal is sanctionable—an issue committed exclusively to the Court of Appeals under Fed. R. App. P. 38; and (2) by prematurely "retaining"—but really "assuming"—jurisdiction over hypothetical sanctions requests following a self-executing Fed. R. Civ. P. 41(a)(1)(A)(i) dismissal as of right.

Fed. R. App. P. 38 commits to the courts of appeals alone the determination whether an appeal is frivolous. The Supreme Court has emphasized that Fed. R. Civ. P. 11 does not apply to appellate proceedings, and appellate conduct is governed exclusively by Rule 38. This limit reflects the divestiture doctrine: once a notice of appeal is filed, jurisdiction over matters involved in the appeal—including the propriety of filing it—rests exclusively with the Court of Appeals. The district court's November 7 order directing briefing on whether the appeal itself was sanctionable exceeded the district court's authority.

A Rule 41(a)(1)(A)(i) dismissal is self-executing and terminates the district court's jurisdiction over the merits. While a court may resolve a pending sanctions motion after dismissal because sanctions are collateral, that authority extends only to concrete, existing disputes. Here, no sanctions motion was pending, and the court had not initiated a Rule 11(c)(3) proceeding. Instead, it retained jurisdiction over any

6

future, hypothetical request for sanctions—an advisory assertion of authority not permitted under Rule 11 or Supreme Court precedent.

The DOE never served a Rule 11(c)(2) safe-harbor notice regarding the motion the district court identified as potentially sanctionable. Without such notice, no party-initiated sanctions motion can be properly filed. Nor did the court issue a valid *sua sponte* order under Rule 11(c)(3), which requires a show-cause order "specifically describing" the challenged conduct and—under this Court's precedent—a finding of subjective bad faith. These procedural safeguards were not fulfilled.

By asserting authority to sanction the filing of a notice of appeal, the district court placed litigants in the untenable position of risking sanctions from the very tribunal they seek to challenge. The Supreme Court has warned that sanctions must not deter meritorious appeals. Fed. R. App. P. 38 exists to prevent such structural conflicts by placing oversight of appellate conduct solely in the appellate courts.

## ARGUMENT

## I.  STANDARD OF REVIEW

This Court reviews the District Court's factual findings under the "clearly erroneous" standard and reviews its legal conclusions *de novo. Muller on Behalf of Muller v. Comm. on Special Educ. of E. Islip Union Free Sch. Dist.*, 145 F.3d 95,

102 (2d Cir. 1998). This Court reviews sanctions rulings for abuse of discretion. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 113 (2d Cir. 2009).

A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990), or rendered a decision that 'cannot be located within the range of permissible decisions,' *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008).

## II.   **IDEA FRAMEWORK**

Congress enacted the IDEA "to assure that all children with disabilities have available to them. .. a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 68 (1999). Children are entitled to "an education 'likely to produce progress, not regression,' and one that 'afford[s] the student with an opportunity greater than mere trivial advancement.'" *T.K. v. New York City Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (quoting *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015); *accord Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017) ("a student offered an educational program providing 'merely more than

8

*de minimis* progress from year to year can hardly be said to have been offered an education at all.'").

The IEP is "[t]he 'centerpiece' of the IDEA and its principal mechanism for achieving this goal." *T.K.*, 810 F.3d at 875. Indeed, "[t]he IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child." *Endrew F. ex rel. Joseph F.*, 580 U.S. 386 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 181 (1982)). "Where the IEP is substantively deficient, parents may unilaterally reject it in favor of sending their child to private school and seek tuition reimbursement from the State." *T.K.*, 810 F.3d at 875. To challenge an IEP, a parent must first file a "due process complaint" detailing the alleged deficiencies of the IEP. *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citing 20 U.S.C. § 1415(b)(7)(A), (f)(1)). Following a 30-day resolution period, the parent and school district will participate in an "impartial due process hearing" before an Impartial Hearing Officer. *Id.*

Under New York law, once the IHO renders a decision, any party aggrieved by the decision may request a review by a state review officer, who can affirm or modify the IHO's Order. *Id.* (citing N.Y. Educ. Law § 4404(1)-(2) (McKinney)). After that, an aggrieved party may bring a civil action in federal or state court to review the SRO's decision. 20 U.S.C. § 1415(i)(2)(A). During the pendency of the

9

aforementioned judicial proceedings, the IDEA's pendency provision, also known as the "stay-put provision," codified at 20 U.S.C. § 1415(j), "entitles a disabled child to 'remain in his then-current educational placement.'" *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014) (quoting 20 U.S.C. § 1415(j)).

The core concern of the IDEA is to provide a continuous, uninterrupted education to disabled children; accordingly, the pendency provision "maintain[s] the educational status quo" of the child and ensures continuity of services while the parties' dispute is being resolved." *See id.* (Citing *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004). "There is no separate requirement that a court determines the placement is appropriate; rather, the obligation arises automatically from a determination that the private school is the protected status quo during the period in which the dispute resolution process is ongoing." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123–24 (3d Cir. 2014) (quotation omitted). "The stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy." *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (citing *Honig v. Doe*, 484 U.S. 305, 326–27 (1988); *John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 318 F.3d 545, 556 (3d Cir. 2003).

Although IDEA does not specify which party pays when a child's pendency placement is at a private school, "the school district's obligation to do so is well established by case law." *M.R.*, 744 F.3d at 118–19 (quotation omitted); *see also Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 87 (3d Cir. 1996) ("[w]ithout interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private-school placement amounts to no choice at all"). IDEA's pendency provision "therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015).

Determining a child's pendency placement requires the Court to identify the student's "then-current educational placement." *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020). This term can mean either 1) the placement described in the student's most recently implemented IEP, 2) the operative placement actually functioning at the time the due process proceeding was commenced, or 3) the placement at the time of the previously implemented IEP. *Doe*, 790 F.3d at 452. "The placement can [] be changed if an impartial hearing officer or state review officer finds the parents' new placement to be appropriate by adjudicating the IEP dispute in the parents' favor, and the school district chooses not

to appeal the decision." *Ventura de Paulino*, 959 F.3d at 532. Moreover, once the parents' challenge to a proposed IEP is successful, consent to the private placement is implied by law, and the school district assumes responsibility for the stay-put requirements. *See Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 483–84 (2d Cir. 2002) (cleaned up).

## III.  THE DISTRICT COURT LACKS AUTHORITY TO ADJUDICATE THE PROPRIETY OF FILING A NOTICE OF APPEAL

The district court's November 7, 2025, order directing briefing on whether the filing of this appeal is itself sanctionable conduct exceeded the court's authority. While a district court retains limited collateral jurisdiction to address sanctions for conduct occurring before it, the determination of whether an appeal is frivolous is committed to the Court of Appeals under Fed. R. App. P. 38. The challenged order crossed this structural boundary.

Fed. R. App. P. 38 provides: "If a Court of Appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. The Rule expressly vests that authority in the Court of Appeals. The Supreme Court has recognized this allocation of authority. In *Cooter & Gell*, the Court held: "On its face, Rule 11 does not apply to appellate proceedings." 496 U.S. at 406. The Court explained that "[o]n appeal, the litigants' conduct is governed by Fed. R. App. P. 38. ..." *Id.* at 407. The Court thus

12

distinguished between district court authority over district court filings and appellate court authority over appellate conduct.

Other circuits have articulated the same structural limit in direct terms. In *Davis v. Crush*, the Sixth Circuit held:

> The focus of any Rule 11 inquiry for the district court must be pleadings, motions, or other papers filed in the district court, as opposed to those filed in state courts or in federal Courts of Appeals. Thus, a district court may not threaten to impose Rule 11 sanctions on attorneys for taking a "frivolous" appeal, or condition such sanctions on the outcome of the appeal.

862 F.2d 84, 88 (6th Cir. 1988) (internal citations omitted).

Likewise, the Ninth Circuit has held that "the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals. ..." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007). These authorities reflect a basic structural principle: Rule 11 governs conduct in the district court; Fed. R. App. P. 38 governs conduct in the Court of Appeals. The district court cannot adjudicate the propriety of invoking appellate jurisdiction. The divestiture doctrine reinforces this structural division.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the Court of Appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). Once the notice of appeal was filed, the propriety of that appeal became an issue committed to this Court.

13

To be sure, a district court retains authority to resolve collateral matters, such as Rule 11 sanctions for conduct that occurred before it. *Cooter & Gell*, 496 U.S. at 395–96. But that retained authority does not extend to adjudicating whether the filing of the notice of appeal itself is sanctionable conduct. As *Cooter & Gell* makes clear, frivolous appellate conduct is addressed under Rule 38. 496 U.S. at 407.

Here, the district court did not simply preserve jurisdiction to resolve a preexisting Rule 11 motion concerning filings made below. It directed a briefing on whether the filing of this appeal is itself sanctionable. That inquiry necessarily requires evaluation of the appeal's propriety—exactly the determination Fed. R. App. P. 38 assigns to the Court of Appeals. Allowing a district court to adjudicate whether a notice of appeal is sanctionable would invert the structure established by the Federal Rules. It would permit the district court to sit in review of the litigant's invocation of appellate jurisdiction while that jurisdiction is actively vested in the Court of Appeals. Neither Rule 11 nor the court's inherent power allows such a role.

The question of whether this appeal is frivolous belongs to this Court. The district court's order purporting to examine and potentially sanction the filing of the notice of appeal, therefore, exceeded its authority and must be vacated.

It should be noted that, while the district court's order directing briefing related to the notice of appeal was, of course, entered after the notice of appeal was filed, that order must be addressed in this appeal. The order is a further illustration of the

14

impropriety (not to mention error) of the district court in inviting a sanctions motion and directing the parties on what to brief in litigating it. The district court at least suggested that Plaintiff's voluntary dismissal of her case, which was as of right because no answer had been filed (*see* Rule 41(a)(1)(A)(1)), was sanctionable, and then suggested that the appeal of that order itself was sanctionable. Had the Plaintiff filed a separate notice of appeal of the November 7 order directing briefing related to the first notice of appeal, she risked the district court directing the parties to address whether *that* notice of appeal was sanctionable.

Appellant would never be able to get in front of the district court's suggestions of sanctionable conduct and directions to address such sanctions. The November 7 order is integral to the October 24 order inviting a sanctions motion; it is a continuation of that order. Thus, the November 7 order is appropriately addressed herein.

Moreover, "this Court has previously excused defects in an Appellant's Notice of Appeal by holding that the notice requirement should be liberally construed." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 54–55 (2d Cir. 2004) (citing *Conway v. Vill. of Mount Kisco, N.Y.*, 750 F.2d 205, 211 (2d Cir. 1984); *Phelps v. Kapnolas*, 123 F.3d 91, 93 (2d Cir. 1997).

In *Peralto v. Aviles-Ramos*, No. 25–1710, this Court denied Appellant's motion to expedite the appeal. (DktEntry 27.1). In the motion to expedite the appeal,

15

Appellant sought review of an order filed after the notice of appeal. (DktEntry 11.1). In this Court's order of denial, the Court directed the parties to address this Court's appellate jurisdiction, "including whether Appellant's motion to expedite can be construed as a notice of appeal from the District Court's July 15, 2025, order denying a preliminary injunction." (Dkt. Entry 27.1 at 1). This Court cited several cases that applied this principle: *See, e.g.*, *Marrero Pichardo*, 374 F.3d at 54–55 (liberally construing counseled notice of appeal to cover denial of reconsideration), overruled on other grounds by *Grullon v. Mukasey*, 509 F.3d 107 (2d Cir. 2007), *as amended* (Jan. 7, 2008); *Rana v. Islam*, 887 F.3d 118, 121 (2d Cir. 2018) (regarding liberal construction of notices of appeal); *see also Smith v. Barry*, 502 U.S. 244, 248 (1992) (construing "informal brief" filed in Court of Appeals as a notice of appeal); *Bacon v. Phelps*, 961 F.3d 533, 540–42 (2d Cir. 2020) (same, with prisoner's letter in district court regarding notice of appeal); *Boguslavsky v. S. Richmond Sec., Inc.*, 225 F.3d 127, 129 n.1 (2d Cir. 2000) (per curiam) (appellate brief); *Marmolejo v. United States*, 196 F.3d 377, 378 (2d Cir. 1999) (per curiam) (motion for certificate of appealability). (*Id.* at 1–2).

In the instant appeal, Appellant addressed the district court's November 7, 2025, order in her Form C, filed on November 20, 2025. (Dkt. Entry 10.1). Per this Court's policy of liberally construing notices of appeal, this Court should construe

16

Appellant's Form C as a notice of appeal from the district court's November 7, 2025, order.

This Court has furthermore recognized that, under the doctrine of pendent appellate jurisdiction, it may review an otherwise unappealable order in the course of reviewing an appealable one. As the Court has explained, pendent appellate jurisdiction "allows us, '[w]here we have jurisdiction over an interlocutory appeal of one ruling,' to exercise jurisdiction over other, otherwise unappealable interlocutory decisions, where such rulings are 'inextricably intertwined' with the order over which we properly have appellate jurisdiction, or where review of such rulings is 'necessary to ensure meaningful review' of the appealable order." *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 116–17 (2d Cir. 2016) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 552 (2d Cir. 2010)); *see also Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 451 (2d Cir. 2021) (exercising pendent jurisdiction "[b]ecause the district court's denial of Mason's motion for a preliminary injunction was based solely on its resolution of the defendants' motion to dismiss, the dismissal of Counts I and II of Mason's amended complaint presents 'the same specific question' at issue in the appealable preliminary injunction order").

Here, the Court's November 7 Order [Dkt. No. 67] is inextricably linked to the appealed issue because, in setting the briefing schedule and identifying the issue the Court is considering sanctions over, it directly bears on whether the District Court

17

erred in retaining jurisdiction. A review of the later order is therefore necessary to ensure a meaningful review of the jurisdictional issues.

## IV. THE DISTRICT COURT'S RETENTION OF SANCTIONS JURISDICTION WAS PREMATURE AND EXCEEDED PERMISSIBLE COLLATERAL AUTHORITY

Even apart from the improper expansion into appellate conduct, the district court's October 24, 2025, order retaining jurisdiction over "any request for sanctions" was premature and exceeded the limited scope of collateral authority recognized after voluntary dismissal.

It is settled that a voluntary dismissal under Rule 41(a)(1)(A)(i) is self-executing and terminates the action upon filing. "[T]he district court has no role to play once a notice of dismissal under Rule 41(a)(1) is filed." *Com. Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1080 (9th Cir. 1999). Once properly filed, the dismissal "is effective automatically and does not require judicial approval." *Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir. 1998) (quoting *In re Wolf*, 842 F.2d 464, 466 (D.C. Cir. 1988) (per curiam) (quoting *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir. 1984)).

The Supreme Court has held that a district court may retain jurisdiction to impose Rule 11 sanctions after a voluntary dismissal because sanctions are collateral to the merits. *Cooter & Gell*, 496 U.S. at 395–96. But that retained authority is limited: it permits adjudication of a concrete sanctions issue arising from conduct

18

that occurred before the district court. It does not authorize anticipatory or advisory reservations of jurisdiction untethered to a properly presented sanctions motion. At the time of the October 24 retention order, no sanctions motion was pending before the court. Nor had the court initiated Rule 11(c)(3) proceedings identifying specific conduct that might warrant sanctions. Instead, the order purported to retain jurisdiction over "any request for sanctions" that might later be made.

Collateral jurisdiction exists to resolve discrete matters that remain live despite dismissal—not to create jurisdiction over hypothetical future disputes. As this Court has emphasized, a district court "retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 98 (2d Cir. 2003). This doctrine presupposes an existing controversy. It does not authorize advisory declarations concerning sanctions that have not been sought. This distinction is important.

In *Cooter & Gell*, a sanctions motion was filed before the dismissal. 496 U.S. at 389. The Court's holding thus concerned its authority to resolve a pending, concrete Rule 11 motion. It did not endorse the open-ended retention of jurisdiction in anticipation of potential future sanctions requests. Nor does Rule 11 contemplate such anticipatory retention.

A party seeking sanctions must comply with Rule 11(c)(2)'s safe-harbor procedure. Alternatively, if the court proceeds *sua sponte* under Rule 11(c)(3), it

19

must "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). The rule requires identifying specific conduct and initiating a defined proceeding—not a generalized reservation of jurisdiction. By retaining jurisdiction over unspecified, hypothetical sanctions requests after the case had been voluntarily dismissed, the district court exceeded the narrow collateral authority recognized in *Cooter & Gell*. The retention order did not resolve a pending sanctions issue. Instead, it preserved authority over an undefined future possibility.

The collateral-order doctrine exists precisely to prevent such structural overreach from evading review. When a district court asserts continuing authority beyond the bounds recognized by Fed. R. Civ. P. 11 and Supreme Court precedent, that assertion of jurisdiction is itself a conclusive determination separate from the merits. *See Cohen*, 337 U.S. at 546. In short, even if a district court may adjudicate a properly presented Rule 11 motion after voluntary dismissal, it may not retain jurisdiction over hypothetical future sanctions requests untethered to a concrete proceeding.

Therefore, the October 24 order exceeded the permissible collateral authority and must be vacated.

## V. THE SANCTIONS PROCEEDINGS FAILED TO COMPLY WITH RULE 11'S MANDATORY PROCEDURAL SAFEGUARDS

Even if the district court possessed authority to consider sanctions after dismissal, the proceedings below failed to comply with Fed. R. Civ. P. 11's mandatory procedural requirements. Rule 11 establishes distinct mechanisms for party-initiated sanctions and court-initiated sanctions—neither was properly followed here.

### A. Any Party-Initiated Sanctions Were Foreclosed by Rule 11's Safe-Harbor Provision

Fed. R. Civ. P. 11(c)(2) provides that a motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2). The safe-harbor provision is mandatory. The Supreme Court has explained that Rule 11 "… must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy. ... " *Cooter & Gell*, 496 U.S. at 393. The safe-harbor mechanism reflects this design by affording litigants the opportunity to withdraw challenged filings before sanctions are sought. This Court has held that imposing sanctions when no safe-harbor notice was served constitutes an abuse of discretion. *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002).

21

Here, the Appellant withdrew the third motion for a preliminary injunction with the DOE's consent on October 23, 2025 (A-59) and voluntarily dismissed the action the following day (A-61). These actions eliminated the challenged filing before any sanctions motion was filed. Once the challenged filing is withdrawn and the action dismissed, no Rule 11(c)(2) motion may be properly filed. Here, the district court's first suggestion of a motion for sanctions was in its October 10, 2025, Order directing Fiallos to file a redline version of the memorandum of law in support of her third motion for preliminary injunction, filed on October 9, 2025. (Dkt. No. 44 at 3). The court stated that this was "to facilitate. .. the Court's assessment of whether sanctions might be appropriate for the frivolous re-filing of a previously rejected motion. ..." (*Id.*). Thus, the alleged issue concerned Fiallos's third motion for a preliminary injunction.

The DOE never served a safe-harbor letter relating to the October 9, 2025, motion. The only safe-harbor letters were served on September 17, 2025, demanding the withdrawal of the first two motions for preliminary injunction, filed on September 4, 2025, and September 15, 2025, respectively. (A-68). The second motion was denied on September 18, 2025, before the 21-day safe-harbor had expired (Dkt. No. 31); the first motion was denied on October 20, 2025, before any motion for sanctions was filed. (Dkt. No. 49). The DOE cannot file a motion for sanctions regarding the third motion, the subject of the district court's October 10,

2025, Order, because they never served a safe-harbor letter as required by Fed. R. Civ. P. 11. The district court erred in reserving jurisdiction to address any such as-yet unfiled motion, which would have been procedurally improper at the outset, and in directing briefing related to the third motion for preliminary injunction.

Accordingly, as much as the district court's retention order contemplated party-initiated sanctions, such sanctions were procedurally barred.

## B. The Court Did Not Properly Invoke Rule 11(c)(3)'s *Sua Sponte* Procedure

Fed. R. Civ. P. 11(c)(3) permits a court to impose sanctions on its own initiative, but only after issuing an order "to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3) (emphasis added). This rule requires specificity.

This Court has made clear that *sua sponte* sanctions are subject to heightened scrutiny. In *In re Pennie & Edmonds LLP*, this Court held that where Rule 11 sanctions are imposed *sua sponte*, "the appropriate standard is subjective bad faith." 323 F.3d 86, 91 (2d Cir. 2003). This heightened standard reflects the absence of a safe-harbor opportunity and the greater risk of overreach.

Here, the October 24 retention order did not identify specific conduct violating Fed. R. Civ. P. 11(b). Nor did it issue a defined show-cause order describing particular statements alleged to be sanctionable. Instead, the court retained

23

jurisdiction over "any request for sanctions" and later directed briefing on whether the filing of the appeal itself was sanctionable.

This sequence does not satisfy Fed. R. Civ. P. 11(c)(3). The rule requires an order "specifically describ[ing]" the conduct at issue. A generalized retention of jurisdiction or an open-ended invitation to brief sanctions does not meet that standard. Moreover, no subjective bad-faith findings were made. As *Pennie & Edmonds* instructs, when a court proceeds *sua sponte*, sanctions may be sustained only upon a showing of subjective bad faith. 323 F.3d at 91. The orders below do not contain such findings.

## C. The Proceedings Failed to Provide the Notice Required by Due Process

Independent of Rule 11's text, due process requires notice of the specific conduct alleged to be sanctionable and an opportunity to respond.

This Court has held that "[d]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (quoting *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 70 (2d Cir. 1996), *abrogated by Lamie v. U.S. Tr.*, 540 U.S. 526 (2004)) (emphasis in *In re Ames*). An attorney must be given "*specific notice of the conduct alleged to be sanctionable* and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter." *Nuwesra v. Merrill Lynch, Fenner &*

*Smith, Inc.*, 174 F.3d 87, 92 (2d Cir. 1999) (quoting *Ted Lapidus, S.A.*, 112 F.3d at 97) (emphasis in original).

Here, the district court did not identify with specificity the precise statements, arguments, or filings that purportedly violated Fed. R. Civ. P. 11(b). Instead, the court broadened the inquiry to encompass whether the filing of a notice of appeal itself was sanctionable. This expansion compounded the procedural defect: it introduced a new basis for sanctions without a properly framed show-cause order and without a finding of subjective bad faith. The combined effect was to initiate an open-ended sanctions inquiry, untethered from the Fed. R. Civ. P. 11(c)(2)'s safe-harbor or Rule 11(c)(3)'s specific show-cause requirement. Fed. R. Civ. P. 11 is not a roving license to revisit litigation strategy after dismissal. It is a rule of defined procedural steps. These steps were not followed here.

For these reasons, even if the district court retained collateral authority, the sanctions proceedings violated Fed. R. Civ. P. 11's mandatory procedural safeguards and must be vacated.

## VI. THE DISTRICT COURT'S EXPANSION OF SANCTIONS AUTHORITY TO THE FILING OF A NOTICE OF APPEAL CREATES A STRUCTURAL CHILLING EFFECT INCONSISTENT WITH THE ALLOCATION OF AUTHORITY BETWEEN DISTRICT COURTS AND COURTS OF APPEALS

The Supreme Court has repeatedly cautioned that the sanctions doctrine must be administered to avoid discouraging legitimate advocacy or appellate review. In

*Cooter & Gell*, the Court emphasized that Rule 11 must be construed in a way that avoids "discouraging meritorious appeals." 496 U.S. at 408. This principle has a structural force. By directing briefing on whether the filing of this appeal itself was sanctionable conduct, the district court did more than retain collateral jurisdiction over past filings. It placed the propriety of invoking this Court's jurisdiction under the supervisory authority of the very court whose decision was being appealed. This inversion creates an institutional tension that is inconsistent with the structure of federal appellate review.

The filing of a notice of appeal transfers jurisdiction over the merits to the Court of Appeals. *Griggs*, 459 U.S. at 58. The district court retains authority only over collateral matters. *Cooter & Gell*, 496 U.S. at 395. But whether an appeal is frivolous is not a merits issue in the district court; it is a question entrusted to the appellate court under Fed. R. App. P. 38.

When a district court announces that it will consider sanctions for filing an appeal, it creates the appearance—and risk—of dual supervision over appellate access.[1] This is precisely the structural concern of the Fed. R. App. P. 38 was

---

[1] In prior litigation, a district court opinion included extensive background commentary referencing allegations about counsel drawn from separate proceedings. *See Ferreira v. N.Y.C. Dep't of Educ.*, No. 19-cv-2937 (S.D.N.Y. Mar. 2, 2020). Subsequent motion practice challenged the factual accuracy and prejudicial nature of that commentary; the court later amended the opinion to delete one sentence and denied further reconsideration motions. *See id.*, Orders dated Mar. 5 and Mar. 11, 2020. This history underscores the institutional importance of

designed to prevent—the Court of Appeals, not the district court, determines whether an appeal abuses the appellate process. This is not merely a theoretical consideration.

If district courts may evaluate and potentially sanction the act of filing a notice of appeal while appellate review is pending, litigants must weigh the risk of district-court reprisal before seeking appellate review. This risk is incompatible with the principle that access to appellate review should not be chilled by the prospect of sanctions imposed by the tribunal whose ruling is being challenged.

This Court has emphasized that sanctions must not be administered in a manner that "chill[s] the creativity that is the very lifeblood of the law. .. .'" *Oliveri v. Thompson*, 803 F.2d 1265, 1268 (2d Cir. 1986). Permitting district courts to supervise the propriety of invoking appellate jurisdiction undermines this safeguard.

This Court need not hold that district courts lack all authority regarding appellate conduct. It only needs to reaffirm that, once an appeal is filed, the determination of whether it is frivolous is governed by Fed. R. App. P. 38 and lies within the supervisory authority of the Court of Appeals—not the court whose decision is under review. This holding preserves the structural boundary between

---

confining sanctions determinations to issues properly before the court and supported by the record. *See also* ABA Model Code of Judicial Conduct Rule 2.9(C) (prohibiting independent fact investigation outside the record).

trial and appellate courts while maintaining the limited collateral authority recognized in *Cooter & Gell*.

## **CONCLUSION**

For these reasons, the Court should:

1.  Hold that the district court's orders retaining sanctions jurisdiction after voluntary dismissal and directing briefing on whether the filing of this appeal is itself sanctionable conduct are immediately appealable under the collateral-order doctrine;

2.  Vacate the district court's retention of jurisdiction as far as it purports to adjudicate the propriety of filing a notice of appeal—an issue ordinarily governed by Fed. R. App. P. 38;

3.  Hold that the sanctions proceedings failed to comply with the procedural safeguards of Fed. R. Civ. P. 11, including the safe-harbor requirement and the requirement of specific notice; and

4.  Remand with instructions that any further sanctions proceedings, if pursued, conform strictly to Fed. R. Civ. P. 11 and due process requirements.

Dated: February 19, 2026
New York, NY

Respectfully submitted,
Liberty & Freedom Legal Group
*Attorneys for Plaintiff-Appellant*

By: _____ /S/ _____

Rory J. Bellantoni (RB2901)
105 East 34th Street, Suite 190
New York, New York 10016
rory@pabilaw.org
(646)-850-5035

29

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,534 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated: February 19, 2026
     New York, NY

                                *<u>/S/ Rory J. Bellantoni</u>*
                                  Rory J. Bellantoni (RB2901)